REQUESTED BY: Senator Robert L. Clark Nebraska State Legislature 2028 State Capitol Lincoln, Nebraska 68509
Dear Senator Clark:
You have called our attention to LB 734, which will not be acted upon this session, but which you anticipate will be introduced again next year. You ask us for our opinion as to its constitutional validity. We believe it is constitutionally suspect in two respects.
The bill would amend Neb.Rev.Stat. § 77-202 (Supp. 1980) to provide in part:
 Transmission and distribution lines, transformers, and associated substation facilities within the State of Nebraska owned by nonprofit cooperative corporations and associations which are used or useful for the transmission and distribution of electric power and energy shall be exempt from taxation, except that any such lines, transformers, and facilities which were assessed and taxed in 1979 shall continue to be taxed based upon the 1979 assessment of such lines, transformers and facilities.
The exemption of such personal property owned by nonprofit cooperative corporations and associations would, we believe, be authorized by Article VIII, Section 2 of the Nebraska Constitution, which authorizes the Legislature to classify personal property in such manner as it sees fit, and to exempt any of such classes. We read into that provision a qualification that the classes must be reasonable, but we believe the designated class of property owned by the specified types of owners would qualify as reasonable.
The problem with the bill is in the exception. Article III, Section 18 of the Constitution forbids unreasonable classification, and we are unable to detect any valid legislative reason for exempting such property which was not taxed in 1979, and taxing permanently all such property that was taxed in that year.
We call your attention to our Opinion No. 82, issued April 24, 1981, in which we dealt with a somewhat similar problem. We reached the conclusion that a permanent exemption from sales and use tax for new equipment purchased for installation in a factory construction of which began after July 1, 1981, while denying such exemption to factories started before that date constituted unreasonable classification.
The classification involved in LB 734 is even more unreasonable. The argument could be made that giving a special privilege to a facility constructed after the passage of the bill would tend to encourage someone to construct it. Here the exemption would be given to equipment installed after January 1, 1979, but before the effective date, or even the passage, of the bill. How could the exemption possibly have had any influence on the installation of the equipment? Yet, that equipment would be given the exemption. We are not suggesting that making the cut-off date after the passage of the bill would cure the defect (we don't think it would), but are simply pointing out that there is no readily apparent reason at all for the classification.
The provision about taxing the property excepted from the exemption `based upon the 1979 assessments of such lines, transformers, and facilities,' very clearly violates the uniformity provision of Article VIII, Section 1 of the Constitution. As we understand that language, such property would continue to be given the same assessed value it was given in 1979, regardless of depreciation, obsolescence, inflation, or any other factor affecting value. It would be assessed differently from other taxable property. We do not believe that authorization of Article VIII, Section 2 of the Constitution for the Legislature to classify and exempt personal property was intended to remove nonexempt personal property from the uniformity requirements of Article VIII, Section 1. In our opinion dated April 11, 1979, Opinions of the Attorney General 1979-80, page 124, we concluded that a provision that no governmental subdivision should thereafter receive less revenue from the taxation of railroads than it did in 1978 violated the uniformity clause of the Constitution. LB 734 contains a similar defect.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General